FILED

DEC 2 7 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

CV 07  6480

**RMW** **(PR)**

Name ___HARRISON_____ ____SEUGA___ ___07___
　　　　　　(Last)　　　　　　　　　(First)　　　　　　_(Initial)

Prisoner Number ___E-47650_____

Institutional Address ___SAN QUENTIN STATE PRISON 3-N-18; SAN QUENTIN, CA 94974___

---

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

___HARRISON SEUGA_____
Full Name of Petitioner

　　　　　　　　　　　Case No.(To be provided by the
　　　　　　　　　　　clerk of court)

　　　　vs.

___ROBERT L. AYERS Jr._____　　　PETITION FOR A WRIT OF HABEAS CORPUS
　　　Name of Respondent
　　　(Warden or jailor)

---

Read Comments Carefully Before Filling In

### When and Where to File

　　　You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

　　　If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located.  If you are challenging the execution of your sentence and you are not in prison in one of these counties, your

petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

Who to Name as Respondent

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now and the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1.  What sentence are you challenging in this petition? PETITIONER IS CHALLENGING DENIAL OF PAROLE

(a) Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

LOS ANGELES COUNTY SUPERIOR COURT          LOS ANGELES, CA
         Court                                              Location

(b)  Case number, if known __ A042687 _____
(c)  Date and terms of sentence 17 YEARS TO LIFE _____
(d)  Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.) Yes X  No

Where? SAN QUENTIN STATE PRISON; SAN QUENTIN, CA 94974
      (Name of Institution)                     (Address)

2.  For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

P.C. 187 (SECOND DEGREE MURDER) P.C.12022.5 (ASSAULT W/FIREARM)

P.C. 245 (a); P.C. 246

3.  Did you have any of the following?

Arraignment: Yes __ No __  Preliminary Hearing: Yes x No __  Motion to Suppress: Yes __ No __

4.    How did you plead?

Guilty ___X___    Not Guilty _____    Nolo Contendere _____

Any other plea (specify) _____

5.    If you went to trial, what kind of trial did you have?

Jury _____    Judge alone _____    Judge alone on a transcript _____

6.    Did you testify at your trial?   Yes ___ No ___

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment   Yes _X_    No ___
(b)    Preliminary hearing          Yes _X_        No ___
(c)    Time of plea   Yes _x_    No ___
(d)    Trial   Yes ___    No ___
(e)    Sentencing   Yes _x_    No ___
(f)    Appeal   Yes ___    No
(g)    Other post-conviction proceeding   Yes ___        No ___

8.    Did you appeal your conviction?   Yes ___ No _X_

(a)    If you did, to what court(s) did you appeal?

Court of Appeal        Yes ___    No ___    _____
                                            (Year)                    (Result)

Supreme Court of
California                Yes ___    No ___    _____
                                            (Year)                    (Result)

Any other court        Yes ___    No ___    _____
                                            (Year)                    (Result)

(b)    If you appealed, were the grounds the same as those that you are raising in this
petition?                                    Yes ___ No ___

(c)    Was there an opinion?        Yes ___    No ___

(d)    Did you seek permission to file a late appeal under Rule 31(a)?
                                            Yes ___    No ___

If you did, give the name of the court and the result:

9.     Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?     Yes          No _x_

Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. § 2244(b).

      (a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.    Name of Court LOS ANGELES COUNTY SUPERIOR COURT

    Type of Proceeding HABEAS PETITION

    Grounds raised (Be brief but specific):

    a.   SAME AS INSTANT PETITION (SEE ATTACHED PETITION)

    b.

    c.

    d.

    Result DENIED (SEE EXHIBIT "B"    Date of Result DENIED

II.   Name of Court SEE ATTACHED EXHIBIT "B"

    Type of Proceeding SAME AS INSTANT PETITON (SEE ATTACHED PETITION)

    Grounds raised (Be brief but specific):

    a.   SAME AS INSTANT PETITION (SEE INSTANT PETITION ATTACHED)

    b.

    c.

    d.

    Result DENIED (SEE EXHIBIT "B"    Date of Result

III.  Name of Court CALIFORNIA SUPREME COURT

Type of Proceeding <u>PETITION FOR REVIEW</u>

Grounds raised (Be brief but specific):

a.   <u>SAME AS INSTANT PETITION</u>

b.   _____

c.   _____

d.   _____

Result <u>DENIED (SEE EXHIBIT "B"</u>    Date of Result _____

    (b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?    Yes __ No _X_

_____

(Name and location of court)

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully.  Give facts to support each claim.  For example, what legal right or privilege were you denied?  What happened?  Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you need more space.  Answer the same questions for each claim.

<u>Note</u>:  You must present ALL your claims in your first federal habeas petition.  Subsequent petitions may be dismissed without review on the merits.  28 U.S.C. § 2244(b); <u>McCleskey v. Zant</u>, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).

Claim One:   <u>SEE ATTACHED INSERTS PG. 1-6</u>

Supporting Facts: SEE ATTACHED INSERT PG. 1-6

Claim Two: SEE ATTACHED INSERT PG. 7-10

Supporting Facts:

Claim Three: SEE ATTACHED INSERT PG. 11-18

Supporting Facts:

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why:

N/A

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

SEE ATTACHED INSERT

Do you have an attorney for this petition?    Yes __   No _X
PETITIONER REQUEST APPOINTMENT OF COUNSEL
If you do, give the name and address of your attorney:

PETITIONER REQUEST APPOINTMENT OF COUNSEL DUE TO THE COMPLEXITIES
OF THIS CASE. PETITIONER WAS A JUVENILE AT THE TIME OF CONVICTION
AND THIS ACTION REQUIRES CLOSE PROFESSIONAL SCRUTINY.

WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

Executed on _12-16-07_          _George , Harrison_
                  Date                   Signature of Petitioner

( rev. 5/96)

INSERT A

GROUND 1

THE BOARD OF PAROLE HEARINGS IS USING THE WRONG STANDARD OF
EVIDENCE TO DENY PAROLE IN VIOLATION OF STATE AND FEDERAL
DUE PROCESS. HOWEVER, EVEN IF THE SOME EVIDENCE STANDARD IS
USED, THERE IS NO SUCH EVIDENCE TO SUPPORT THE BOARD'S DECISION
THAT PETITIONER CURRENTLY POSES AND UNREASONABLE THREAT TO
PUBLIC SAFETY IF RELEASED FROM PRISON.

In Superintendent v. Hill, 472 U.S. 455, the Court held that due
process requires a prison disciplinary decision be supported by some evidence.
"In a variety of contexts, the Court has recognized that a governmental
decision resulting in the loss of any important liberty interest violates
due process if the decision is not supported by any evidence." Id. at 455.
Indeed, the general rule is that review of agency decisions, including those
made by a quasi-judicial officers, is for substantial evidence. (See e.g.,
Evans v. Charter, 110 F.3d 1480, 1483 (9th Cir. 1997) (review of ALJ findings);
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990) (same.).

The state and federal courts have tended to assume that the "some
evidence" standard in Hill is the standard that applies to parole decisions.
Petitioner contends that is wrong. The usual standard is substantial evidence.
Hill developed an exception for prison disciplinary hearings, and exception
premised on the unique circumstances of prison discipline. No U.S. Supreme
Court case, and certainly nothing in Hill, suggest that the "some evidence"
standard is appropriate for, or would satisfy due process in, parole matters.

The requirements of due process are flexible and depends on balancing
of the interest affected by the relevant government actions. (See, e.g.,
Cafeteria Workers v. McElroy, 367 U.S. 866, 895 (1961).) In Hill, the Supreme
Court balanced a prisoner's interest in good time credit against "the
distinctive setting of a prison, where disciplinary proceeding 'take place
in a closed, tightly controlled environment.'" 472 U.S. at 454. The Court
rejected the prison's argument that no particular quantum of evidence should
be required in disciplinary proceedings. Nevertheless, the Court held that

1

INSERT A (cont.)

because "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances," a less, rather than more, stringent quantum of evidence satisfied due process. Id. at 455-56.

The Due process analysis called for, however, weighs substantially differently, on both ends, in the parole setting context. First, the prisoner's interest is greater. In the prison disciplinary context, the prisoner stands to lose some days of good time credit. Because that will delay his release by that many days, his interest is great; but the decision will not control whether he ever regains his liberty. Parole Board Hearing denials are significantly different. A denial of a parole date does not just delay a prisoner's release by a set number of years; it takes away all the good time credit earned toward a set prison term, leaving the very real possibility that the prisoner will spend many years in prison way beyond his Minimum Eligible Parole Date ("MEPD") and the terms set forth in the Board's own Matrix guidelines, and perhaps being release only after age has made it almost impossible for him to gain a quality life, or dying in prison. Thus, the prisoner's side of the due process balancing is substantially weightier than it is in a disciplinary hearing. In the instant case Petitioner is now nearly seven years beyond his MEPD, which is set at August 31, 2000, and with good time credit that he has earned, Petitioner has now served a term equivalent to that of a first degree murder Matrix of 27 years.

"The 'some evidence' standard sends a message to prison inmates as well as society at large that once an individual is convicted of a crime, he is presumed guilty of every subsequent allegation. This message runs contrary to fundamental principles of criminal law in the United States."

INSERT A (cont.)

Carrillo v. Fabian 701 N.W.2d, 763; 2005 Minn. LEXIS 424.

   A. Some Evidence Does Not Support The Board's Decision Finding
      Petitioner Unsuitable for Parole.

   In the final analysis, it may not be necessary for this Court to
determine the quantum of evidence necessary to reverse a parole date, for
even under the "some evidence" standard, the evidence before the Board does
not support the Board's finding that Petitioner is a current threat to public
safety. It is important to note, however, that even under the "some evidence"
rule, the evidence must bear "some indicia of reliability." Biggs, 334 F.3d
at 915; McQuillion, 306 F.3d at 904.

   Under California law, a parole date must be set unless the panel
determines that the "gravity of the current or convicted offense or offenses,
or the timing and gravity of the current or past convicted offense or offense
is such that consideration of public safety requires a more lengthy period
of incarceration...." Cal. Penal Code § 3041(b). The panel must determine
"whether the life prisoner is suitable for release on parole," and whether
"the prisoner will pose an unreasonable risk of danger to society if released
from prison." Cal. Code Regs. tit. 15 ("CCR-15") § 2402(a). The panel must
consider "all relevant, reliable information," and is guided by circumstances
tending to show suitability and unsuitability for parole. Id. as § 2402(b)-
(d).

   There is no question that the only basis for finding a life prisoner
unsuitable for parole under California law is that he presents a **current** threat
to public safety. There is no evidence that supports such a finding.

   A review of the record in this case shows that by every measure,
Petitioner has rehabilitated himself and his potential release presented no
danger, much less an unreasonable danger, to the public. The Board's decision
is based almost exclusively on the circumstances of the commitment offense,

INSERT A (cont.)

a second degree murder that occurred unintentionally, while as a youth, 17

years old, Petitioner gave into peer pressure and shot at a steal plated door.

The bullets traveled through the door, and unknowingly to Petitioner at that

time, killing the security guard on the other side and injuring two others

in the leg. He had no intentions to kill and is very sorry for his impulsive

and stupid behavior. Nevertheless, this case does not even come close to the

grave nature in the first degree murder case of In re Elkins, 144 Cal.App.4th

475 (2006), wherein Elkins killed his high school friend, beating him with

a bat while he slept in order to rob him, after disposing the body over a

remote cliff, he returned to steal the victim's property and robbed the

victim's girlfriend as well. The Board, nevertheless, found Elkins suitable

for parole and the after the Governor reversed that decision, the Court

reversed the Governor's decision and set Elkins free. There is no way that

it could be said that Petitioner went beyond the element needed to complete

the murder when he did no more than shoot at a steal plated door that he did

not think the bullets would go through. Petitioner, who was 17 year old at

the time, got scared and ran from the scene. "Needlessly striking a robbery

victim may of course show an especially heinous, atrocious or cruel robbery,

but does not necessarily show an especially brutal first degree murder." The

same reasoning could apply here where shooting at a steal plated door may

be especially atrocious for "discharging a firearm" but does not necessarily

show especially brutal for a second degree murder. The Elkins court found

that "[T]he evidence shows that the killing was an afterthought, if thought

about it all. If there was malice aforethought, it arose spontaneously when

the victim woke up and kept moving." In the instant case, there was no finding

of premeditated murder or that "[t]he murder was especially heinous, atrocious,

or cruel," be by a jury or court. These are first degree murder elements and

INSERT A (cont.)

must be found true by a jury in order to be used to deny parole or to set and aggravating term for Petitioner. (See Cal. Penal Code §§ 190.2 (14); 190.4; and Cunningham v. California, 549 U.S. ___ (2007).) Petitioner was not charged or convicted of the element of having carrying out the crime in an "especially cruel and/or callous manner." (See Exhibit A, at pp. 97, 101.)

There are no elements of the crime which render it exceptional for a second degree murder, let alone first degree murder with special circumstances. The crime was not committed in an "especially heinous, atrocious or cruel manner" by the standards and criteria of § 2402(c)(1)(A) through (E). The Court's attention is respectfully referred to what is set out above. Moreover, as difficult as it may well be for the Board to distinguish between facts which render the crime "exceptional" and those which elevate it to a different, more serious crime; the Board must make this distinction to give proper effect to its own regulations. If the Board is unable to use the regulations to give proper effect to Penal Code § 3041(b), the regulations are vague as written; if the Board is simply misusing the regulations to support a pre-determined decision to deny parole, they are vague as they are being applied. In either case the standards of § 2402, subds. (c)(1)(A)(E) are unconstitutionally vague. In Maynard v. Cartwright, 486 U.S. 356 (U.S. 1988) the Court inter alia considered a vagueness challenge to the section defining aggravating circumstances for capital punishment in Oklahoma's death sentence law. (See also Furman v. Georgia, 408 U.S. 238, 33 L. Ed.2d 346, 92 S.Ct. 2726 (1972), where the high court held that Georgia's then-standardless capital punishment statute was being applied in an arbitrary and capricious manner; there was no principle means provided to distinguish those that received the penalty from those that did not. E.g.,

INSERT A (cont.)

id. at 310 (Stewart, J., concurring); id., at 311 (WHITE, J., concurring).

Petitioner was convicted for second degree murder. However with time in custody and custody credits, Petitioner has served sufficient time to put him into the matrix for suggested based terms for first degree murder (Cal. Regs. Title 15 § 2403). Accordingly for exceptionality Petitioner's crime must be tested against first degree murders with special circumstances. (In re Weider, 145 Cal.App.4th 570, 582-583 (2006)). Even if the crime facts exceed those elements necessary for a conviction of second degree murder, which is not conceded, without deliberation and premeditation of murder, the crime does not reach the status of a first degree murder. A fortiori, it cannot possibly be "especially heinous, atrocious or cruel" for a second degree murder. Petitioner did not directly shoot at anyone when he shot at a steel plated door under peer pressure as a teenager, and the Superior Court denial of the petition for writ of habeas was an unreasonable application of state and federal law due process. (See In re Barker, ____Cal.App.4th , 2007 WL 1502277 (CA1 No. A114686); and In Lawrence, ____Cal.App.4th___, 2007 WL 1475283, CA2 No. B190872.)

Just as the nature of Lawrence's offense in the manner of In re Lawrence, 2007 Cal.App. LEXIS 803 (Cal.Ct. App. 2007), "...does not supply "some evidence" rationally demonstrating Lawrence's release would unreasonably endanger public safety". (In re Lawrence, supra, *101), so too there is not "some evidence" that rationally demonstrates that Petitioner's crime is such that his release would unreasonably endanger public safety. Without such evidence, not in the abstract but relating to Petitioner in particular, the parole denial is improper. (See In re Rosenkrantz, 29 Cal.4th 616 "We have explained that parole release decisions concern an inmate's anticipation or hope of freedom, and entail the Board's attempt to predict by subjective

INSERT A (cont.)

analysis whether the inmate will be able to live in society without committing additional antisocial acts. (Sturm, supra, 11 Cal.3d at p. 266.) "The [Board's] exercise of its broad discretion 'involves the deliberate assessment of a wide variety of individualized factors on a case-by-case basis, and the striking of a balancing between the interests of inmate and of the public.' [Citation.]" Powell, supra, 45 Cal.3d at p. 902.). "The [Board's] discretion in parole matters has been described as 'great' [citation] and 'almost unlimited' [citation]." (In re Rosenkrantz, supra, 655).

Petitioner's crime is reprehensible and deserving of severe sentence which it generated. However the sentence includes the possibility of parole after serving two-thirds of the minimum 17 years (11.33 years). The crime which justified the sentence could only justify the extra punishment of a parole denial if, in the panel's view, that same crime, alone or with past crimes, is especially heinous, atrocious or cruel, judged by the standards of the regulation. (Cal. Penal Code § 3041[a] and [b]; Cal. Code of Regs. Tit. 15 § 2281 [c][1][A][E]). To lawfully be judged exceptional, justifying the additional punishment of further custody, that with prior criminal conduct if any, must be indicative of future criminal conduct.

Petitioner's history of prior crimes and his offense itself, evaluated by the criteria and standards set out by law, is not exceptional. (In re Gray (2007) 151 Cal.App.4th 379; In re Barker (2007) 151 Cal.App.4th 346; In re Lawrence (2007) 150 Cal.App.4th 1511.)

For the reason set out above, the Court should order the Board to vacate its determination that Petitioner is not suitable and release him on parole a this time.

INSERT B

## GROUND 2

THE BOARD OF PAROLE HEARING'S VIOLATED PETITIONER'S STATE AND
FEDERAL RIGHT TO DUE PROCESS AND TRIAL BY JURY WHEN THEY USED
ELEMENTS THAT WERE EITHER DISMISSED OR NOT FOUND TRUE BY A
JURY TO DENY PAROLE AT HIS NOVEMBER 30, 2006 PAROLE
CONSIDERATION HEARING, IN VIOLATION OF STATUTORY LAW, AND UNITED
STATES SUPREME COURT'S HOLDINGS.

On November 30, 2006, Harrison Suega ("Petitioner") appeared before

the Board of Parole Hearings ("Board") for his third parole consideration

hearing. Petitioner was denied parole for two years. In their decision to

deny parole, the Board stated in pertinent part that:

> The commitment offense was carried out in an especially cruel
> and callous manner. There were multiple victims that were
> attacked, injured, and/or killed in the same incident. The
> offense was carried out in a dispassionate manner, it was
> carried out in a manner which demonstrates an exceptionally
> callous disregard for human suffering, and the motive for
> the crime is inexplicable or very trivial in relation to the
> offense, and these conclusions are drawn from the Statements
> of Facts wherein the prisoner was apparently the only one
> armed with a weapon, a deadly weapon, it turned out to be
> an Uzi, and succumbed to peer pressure, it appears, by your
> fellow gang member yelling, "Shoot at the door. Shoot at the
> door," and without thinking, you just went ahead and ended
> up killing a man ....

(Exhibit A, November 30, 2006, Board Hearing Transcripts ("BT") pp. 96-97.)

The record clearly shows that the Board retried Petitioner in order

to use elements and evidence, that were either dismissed or not presented

to a jury, to deny parole. In the instant case, the record (Exhibit A, pages

51 - 78) shows the cross-examination by Deputy Commissioner Filangeri and

then Deputy District Attorney Jacobs (Ibid, 78-80). The Board then used this

cross-examine as evidence to show that the "commitment offense was carried

out in an especially cruel and/or callous manner." (BT 96.) Petitioner was

not convicted of having committed the commitment offense in "especially cruel"

manner. This element is a first degree murder elements (Cal. Penal Code §

190.2) and must be found true by a jury. (Cal. Penal Code § 190.4.) The Board

cannot reverse the plea agreement of a second degree murder now, with good

INSERT B (cont.)

conduct credit, that Petitioner is within the Matrix of for a first degree murder.

The Board's findings that the commitment offense was carried out in a especially cruel and callous manner, and very dispassionate, manner violates both statutory and United States Supreme Court law. For instance, California Penal Code § 190.2 subsection (14) describes the element used for first degree murder special circumstances that qualify a defendant for a Life Without the Possibility for Parole, or Death Penalty is that "[T]he murder was especially heinous, atrocious, or cruel, manifesting exception depravity. As used in this section, the phrase 'especially heinous, atrocious, or cruel, manifesting exceptional depravity' means a conscienceless or pitiless crime that is unnecessarily tortuous to the victim." This element must be found true under Section 190.4, under California Penal Codes.

In a recent ruling, the United States Supreme Court held that:

> The DSL, by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the sixth and Fourteenth Amendment ... In all material respects, California's DSL resembles the sentencing systems invalidated in Blakely and Booker. Following the reasoning in those cases, the middle term prescribed under California law, not the upper term, is the relevant statutory maximum. Because aggravating facts that authorize the upper term are found by the judge, and need only be established by a preponderance of the evidence, the DSL violates the rule of Apprendi.

(Cunningham v. California, DJDAR 1003, 1004.)

In the instant case, Petitioner's minimum has been set at 17 years, and according to the Board's own Matrix, his base term should be set at somewhere between 17 years and 19 years. The Board's regulation allows a one year adjustment in the upward or lower term than the base term for aggravating and mitigating circumstances. (Cal. Code of Regs. tit. 15 §§ 2404 and 2405.) In order for Petitioner's term to be set at life without the

INSERT B (cont.)

possibility of parole, the elements used to determine that finding must be found true by a jury. (Penal Code § 190.4.) Petitioner may also be held in prison if he continues to break the law while in prison, but there is no such evidence in this case.

The Board's illegal policy, of retrying cases and using elements that were not either presented to a jury or dismissed by the trial court, violates the expressed mandates of California Penal Code § 3041(b), which unequivocally states that parole release shall "normally" be granted.

All murders are by nature violent, horrific, abhorrent and morally repugnant. But the Legislature decided that in order for some elements to be used to set a defendant's term to Life Without the Possibility of Parole they must be found true by a jury. (Penal Code § 190.4) and that murder, per se, is not a sufficient basis for denying parole. There must be something more. Otherwise the statutory provision for indeterminate sentences would make no sense, as every parole release of a murderer would then deprecate the seriousness of the crime. If the seriousness of [Petitioner's] crime had been intended as the sole criteria by which release was to be measured, there would have been no reason for Petitioner's original sentence to be anything but "Life in Prison." Clearly the laws of California did not contemplate this scenario and it is a violation of state and federal law to resentence Petitioner now that, with the good time credit earned, he has completed a sentence for the most heinous second degree murder described in the Board's Matrix guidelines for setting terms. "[Petitioner] 'has served so much time that, with custody credits, he is within the matrix for first degree murder .... [I]t should be self evident that after an inmate has served the equivalent of 25 years, [in the case 23 years], whether his actions were more than minimally necessary for a second degree conviction ... is no longer the

10

INSERT B (cont.)

appropriate question. [The Board's] position, that inmates who were only convicted of second degree may forever be denied parole based on some modicum of evidence that their acts rose to the level of a first, without acknowledging the fact that they have already served the time for a first, should be seen as so ridiculous that simply to state it is to refute it.'" (In re Weider, 2006 DJDAR 15795, 15798.) In this case, because Petitioner stopped shooting at the door once he realized what he was doing and did not actually point the gun at human being, and in fact did not learn about the death until the next day, it cannot be said that Petitioner did more than the minimal necessary to commit the second degree murder.

"Parole eligibility is a facet of a criminal sentence ... and thus the statutes and regulations governing parole eligibility are considered to be part of the law annexed to a crime when it is committed." Warden v. Marrero, 417 U.S. 653, 661-664 (1974) and Weaver v. Graham, 450 U.S. 24, 32-33 (1981). "[T]he Ex Post Facto Clause provides a means of assuring that an individual receives fair warning of criminal statutes and the punishments they carry." Weaver, 450 U.S. at 28-30. Here there is no fair warning that the second degree murder could be reheard/retried at the parole consideration hearing, where a finding that the crime was "calculated" or "especially cruel," can be used to deny parole.

For the foregoing reasons, the Court should find that the Board's retrying of the case and using elements that were not found true by a jury to deny parole violates Petitioner's state and federal due process and order the Board to set Petitioner's base term within the Matrix guidelines. If any time calculated goes beyond the base term with good time credit, the Court should order the Board to calculate the time toward Petitioner's minimum 5 year term for parole.

INSERT C

## GROUND 3

THE BOARD OF PAROLE HEARINGS VIOLATED PETITIONER'S FOURTEENTH AMENDMENT DUE PROCESS RIGHTS BECAUSE ITS DECISION WAS BASED UPON STATE REGULATIONS THAT CONTAINED INTOLERABLE VAGUE CRITERIA THAT INVITE ARBITRARY AND DISCRIMINATORY ENFORCEMENT.

On November 30, 2006, Petitioner appeared before the Board of Parole Hearings ("Board") for his third parole suitability consideration hearing and was denied parole for two years. The Board based its decision on the factors that were used to deny parole at Petitioner's two previous hearings. This Petition challenges the November 30, 2006 hearing, and the regulations used to consider parole suitability, and unsuitability.

Specific factors are applicable to the Board's decision as set forth in Penal Code Section 3041 and the California Code of Regulations, Title 15 ("CCR-15"), section 2402.

The overreaching consideration is "public Safety" and, as stated in subdivision (b) of Penal Code section 3041, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offense or the timing and gravity of the current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration for this individual ..." [emphasis added].

The factors required to be considered by the Board are, for the most part, specified in section 2402 of CCR-15, which consists of four subdivisions.

Subdivision (c) specifies six non-exclusive factors tending to show unsuitability. These specified factors are as follows:

1. **Committed Offense** -- If the prisoner committed the offense in an especially heinous, atrocious or cruel manner. (See Cal. Penal Code § 190.2 (14) for definition of "especially heinous, atrocious or cruel manner.") The factors to be consider include:

(a) If multiple victim were attacked, injured or killed in the same or separate incident. In this Case, there was one victim who was killed, but

INSERT C (cont.)

two others that were wounded. Petitioner admits that he gave into peer pressure and shot at a closed door without thinking if there might be someone standing behind the close the door.

(b) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder. The trial evidence does not demonstrate anything other than a seventeen year old boy shooting at a closed door after giving into peer pressure. Petitioner was not convicted of first degree murder and there is no reasonable evidence that the murder was planned by Petitioner. All murders are dispassionate.

(c) The victim was abused, defiled and/or multiple before, during or after the offense. The victim was shot by stray bullets that traveled through a steal plated door. Beyond that, there was no evidence of abuse or mutilation.

(d) The motive for the crime is inexplicable and very trivial in relation to the offense. Essentially all murders are inexplicable or trivial in relation to most events that lead up to a killing. If this were a sole basis for parole, no one in prison for murder would ever be paroled. (See In re Elkins, (2006) ___Cal.App.4th___ (filed October 31, 2006).)

2. **Previous Record of Violence** -- There is no reliable evidence on the record of pervious violence, other than Petitioner admitting that he was involved in some fights as a adolescent.

3. **Unstable Social History** -- The record does show an unstable social history as a child and adolescent, however, his recent social history includes mentoring "at risk" youth and participating in educational, vocational, and other self-help programs. He has maintained his family ties and is remarkably a different person that has matured and taking advantage of the programs available at San Quentin State Prison. He has "developed an understanding of the causative factors and culpability for crime" and takes "full

INSERT C (cont.)

responsibility for the crime." (Exhibit A, p. 35.)

4. **Sadistic Sexual Offenses** -- This is not applicable to Petitioner.

5. **Psychological Factors** -- There is no reliable evidence that Petitioner had any history of mental problems related to the offense. On the contrary, Contract Psychologist Michelle Inaba states that, "[Petitioner] would seem to be a low risk for future violence.... With the stipulation that abstinence and participation in twelve step programs should be ongoing, [Petitioner] would be an excellent candidate for parole consideration at the present time." (See Exhibit A, p. 36.)

6. **Institutional Behavior** -- Petitioner has two serious infractions, one from 1992 for taking extra food from the kitchen which was a charge of "stealing state funds." He paid a fine for the food. He also received one for "force and violence" but there were no injuries involved. The incident involved a riot that occurred between the black and Hispanic inmates in 1994. Petitioner was in the chow hall and everyone in the chow hall at that time received the same serious infraction. Petitioner pled guilty to participation when he placed a food cart in front of him to ward of inmates that were swinging at each other. Petitioner did not hit or injure anyone. CDC-128s are counseling chronos and not rule violation. (See CCR-15 § 3312-3313; see also In re Smith, 109 Cal.App.4th at p. 505 [rejecting the Governor's reliance on counseling chronos reporting "minor misconduct" to reverse a parole grant].) It is only serious rules violations that potentially bear on parole suitability. (See CCR-15 § 2402, subd.(c) [institutional behavior may suggest unsuitability for parole where "[t]he prisoner has engaged in serious misconduct in prison or jail"]; see also id at § 2451 [only serious misconduct reportable to Board to determine if parole grant should be rescinded].) Asserted "minor misconduct" reported in a counseling chrono is not relevant

INSERT C (cont.)

for an additional reason: It is not reliable, because no procedural protections attend such reporting. (See id. at § 3312 et seq.) In this case the Board illegally used counseling chronos, even one that was found to be a mistake, to deny parole.

Subdivision (d) of section 2402 is a converse of subdivision (c) that specifies nine factors tending to show **suitability** for release. The factors are:

1. **No Juvenile Record** –– Petitioner does not have a sufficient criminal history of violence.

2. **Stable Social History** –– Petitioner's unstable history was a result of lack of adult supervision. However, Petitioner's social history during his incarceration has been stable and is evident by his participation in educational, vocational, self-help groups, and family ties. He has matured and has family and community support for his release.

3. **Signs of Remorse** –– Petitioner took responsibility of the commitment offense and has shown his remorse through his performance in a litany of acts over the past many years which tend to indicate the presence of remorse or indicating that he understands the nature of the magnitude of his offense. (See Exhibit A, pp. 27-37, 41-48.)

4. **Motivation for Crime** –– Petitioner had no motivation for participating in the death of the victim. As stated by the Board "[Petitioner] blindly shot into a door with an Uzi weapon without thought about what or who [Petitioner] could be hitting or hurting." (See Exhibit A, BT 100-101.)

5. **Battered Women's Syndrome** –– This does not apply.

6. **Lack of Criminal History** –– Petitioner lacks a significant criminal history of violent crimes, and all of his criminal history while he was adolescent. Three general differences between juveniles under 18 years old

INSERT C (cont.)

and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. Juveniles' susceptibility to immature and irresponsibility behavior means "their responsible conduct is not a normally reprehensible as that act of an adult." (Thompson v. Oklahoma, 487 U.S. 815, 835. Their own vulnerability and comparative lack of control over their immediate surroundings means juveniles have a greater claim than adults to be forgiven for failure to escape negative influences in their whole environment. (See Stanford v. Kentucky, 492 U.S. 361, 395, 109 S.Ct. 2969.)

7. **Age** -- Petitioner was 17 years old when he committed his offense, and 34 years old at the time of his hearing, which reduces the probability of recidivism.

8. **Understanding and Planning for the Future** -- Petitioner has made numerous plans for his release and gained several vocational trades and excellent marketable skills. He has a home to live in with his family, or friends, and all parole agencies have associates with the employment agencies. It is part of the parole agents' job to help in these matters.

The record clearly shows that Petitioner has programmed and matured through his many years of incarceration. Fortunately, he has taken advantage of the self-help, educational, and vocational programs. In fact, he now facilitates self-help in the San Quentin TRUST (Teaching Responsibility Utilizing Sociological Training) to inmates willing to rehabilitate, and is a member of "SQUIRES" counsel "at risk" youth. (Exhibit A, BT p. 26.)

The commitment offense that has placed Petitioner in prison for the past many years involves killing of a man when Petitioner fired into a steal plated door without thinking that someone could be standing behind it. Petitioner pled guilty to his crime and is now within the Matrix for a first degree murder. The commitment offense, and adolescent behavior are the only

factors indicative of unsuitability Petitioner cannot change. To simply focus and rehash the commitment offense, as is typical of most letters the Board is accustomed to seeing from law enforcement agencies, is unfair and runs contrary to the rehabilitative goals exposed by the prison system and could result in a due process violation. (See In re Weider, 145 Cal.App.4th 470, 585-586 (2006).) The commitment offense can negate suitability only if circumstances of the crime were reliably established by evidence in the record to rationally indicate that offender will present a current unreasonable risk if released from prison. There is no evidence from the psychiatric evaluation or the counselor report to support that. Rather, to the contrary, Petitioner is stated to be less of a risk than any other normal person who is not incarcerated and an excellent candidate for parole.

Several California state cases have found that the Board's finding that a particular inmate needs additional therapy is contradicted by the record. (See In re Deluna, 126 Cal.App.4th 585, 596 (2005); In re Ramirez, 94 Cal.App.4th 549, 571 (2001); In re Scott, 119 Cal.App.4th 871, 896-897 (2004).) These cases are applicable here where there is no evidence to support the Board's finding.

The Regulations are Unconstitutionally vague. A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes (See Coates v. City of Cincinnati, 402 U.S. 611, 614 (1971)), or if it invites arbitrary and discriminatory enforcement. (See Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972); also Jordan v. De George, 341 U.S. 223, 231-32 (1951). Neither of these strands may be applied mechanically, however, but by a reasoning process. Judgment is necessary to determine "[t]he degree of vagueness that the Constitution tolerate -- as well as the relative importance

INSERT C (cont.)

of fair notice and fair enforcement" and this, in turn, "depends in part on the nature of the enactment." (Village of Hoffman Estate v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982). The threshold question in a vagueness challenge is "whether to scrutinize the statute for intolerance vagueness on its face or whether to do so only as the statute is applied in a particular case. (Schwartzmiller v. Gardner, 752 F.2d 1341, 1346 (9th Cir. 1984).)

Petitioner was denied due process is as far as the regulations are unconstitutionally vague as applied to him. Petitioner contends that the Regulations are unclear on whether a second degree murder can be deemed "especially heinous, and cruel" to warrant a denial of parole. According to California Penal Codes § 190.2 subd. (14), this is a special circumstance for first degree murder that qualifies a defendant for a Life Without the Possibility of Parole sentence, or the Death Penalty. The regulations are also vague and never addresses the question of: "How many times is the Board allowed to rely on the commitment offense to deny parole?"

There is no evidence to support the Board's decision that Petitioner poses a current threat to public safety. The only thing that the records shows is that the Board does not follow its own rules and instead retries prisoners in order to use anything the prisoners admits against them and use the same reason to deny parole as it does in every case, that the crime was "especially callous." The Court should grant the petition, order the Board to provide any hearing decisions transcripts for the period covering November 30, 2005 to November 30, 2006, that granted a parole date based on the factors showing suitability to someone that had not been denied parole previously, which would show that the Board has turned Legislative intent, that parole "shall normally" be granted, on its head. The Board should be ordered to set Petitioner's date and if any time goes beyond the calculated term, it should be calculated toward Petitioner's five year parole period.

CONCLUSION

The ultimate directive to the Board of Parole Hearings by Penal Code § 3041; California Code of Regulations, Title 15, § 2400 and the decided cases, is to make a determination as to whether or not Petitioner would now pose an unreasonable risk of danger to society if he were to be released.

The focus is on the present time. The "preponderance of the evidence" upon which the Board may rely to deny parole must be evidence of a present danger of Petitioner committing a violent act against society if he us released from prison.

In Thomas v. Brown, 2006 U.S. Dist. LEXIS 94460, 11-12 (D. Cal. 2006) the court itself looked at the current psychological evaluation and emphasizing the currency of the potential threat, faulted the Governor for relying on an old psychological evaluation and ignoring a more current one. (Thomas v. Brown, supra, *24.)

Similarly in Petitioner's case, the Board ignored the evaluations of psychologists. Had the Board fairly and impartially reviewed the relevant and reliable information available to it, rather than pick and chose that which most suited its predetermination to deny parole and ignore the rest, the Board would have reached a different conclusion and set Petitioner term within the Matrix for second degree murder. This would allow Petitioner to benefit in other self-help rehabilitation programs that are only available to prisoners who do have their terms set - Pre-release programs, Project Reach, Family visits, etc... - and allow Petitioner to participant in the "Joint Venture Program" as a non-life prisoner where he could earn minimum wage, pay for his room and board, child support, family support, and save for his future release. The Board would also be required to apply the good time credit that he has earned, which so far has been able to circumvent by continue use

of the crime as a reason to deny parole.

There is not "some evidence" on the record to support the Board's finding that there is "preponderance of the evidence" to support a finding that consideration of the public safety requires Petitioner to be incarcerated for a more lengthy period. The Board can simply use its regulations to aggravate the term beyond the base term that closely fits Petitioner's crime situation and circumstances. This would save not only court's resources, tax payers money, but also take away the anxiety of not knowing when one will be release.

Wherefore the relief prayed for in this petition should be granted.


Dated: December 16, 2007                Respectfully submitted;

                                        *Harrison Seuga*
                                        Harrison Seuga
                                        Petitioner in Pro se

EXHIBIT "A"

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

**INMATE COPY**

| | | |
|---|---|---|
| In the matter of the Life Term Parole Consideration Hearing of: | ) ) ) ) | CDC Number E-46750 |
| HARRISON SUEGA | ) ) | |

SAN QUENTIN STATE PRISON

SAN QUENTIN, CALIFORNIA

NOVEMBER 30, 2006

4:17 P.M.

PANEL PRESENT:

Ms. Janice Eng, Presiding Commissioner
Mr. Doug Filangeri, Deputy Commissioner

OTHERS PRESENT:

Mr. Harrison Suega, Inmate
Mr. John Stringer, Attorney for Inmate
Mr. James Jacobs, Deputy District Attorney
(via video conference)
Correctional Officer(s), Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

———  No        See Review of Hearing
———  Yes       Transcript Memorandum

**BERENICE BILLINGTON**

**NORTHERN CALIFORNIA COURT REPORTERS**

ii

INDEX

Page

Proceedings ..................................... 1

Case Factors ................................... 10

Pre-Commitment Factors .......................... 16

Post-Commitment Factors ......................... 24

Parole Plans ................................... 38

Closing Statements ............................. 82

Recess ......................................... 95

Decision ....................................... 96

Adjournment..................................... 103

Transcriber Certification....................... 104

--oOo--

1

1          P R O C E E D I N G S

2          **PRESIDING COMMISSIONER ENG:**  This is a

3    Subsequent Parole Consideration Hearing for

4    Harrison Suega.  Did I pronounce that correctly,

5    sir?

6          **INMATE SUEGA:**  Suega.

7          **PRESIDING COMMISSIONER ENG:**  Excuse me?

8          **INMATE SUEGA:**  Suega.

9          **PRESIDING COMMISSIONER ENG:**  Suega?

10         **INMATE SUEGA:**  No.  Suega.

11         **PRESIDING COMMISSIONER ENG:**  Suega.  Okay.

12   S-E-U-G-A, CDC number E-46750.  Today's date is

13   November 30th, 2006, and the time is 4:17 p.m.  We

14   are located at San Quentin State Prison.  Inmate

15   was received on February 23rd, 1990 from Los

16   Angeles County.  The life term began on June 3rd,

17   1990.  The minimum eligible parole date is August

18   31st, 2000.  The controlling offense for which the

19   inmate has been committed is Murder Two, Use of a

20   Weapon, case number A042687, count one, Penal Code

21   187, and Penal Code 12022.5; count two, Assault

22   with a Firearm, Penal Code 245(a); count three,

23   Penal Code 246, Discharge of a Firearm.  The

24   inmate received a total term of 17 years to life.

25   This hearing is being tape recorded, and for the

26   purpose of voice identification, each of us will

27   be required to state our first and last names,

2

1    spelling out our last name.  When it comes to your

2    turn, sir, after you've spelled out your last

3    name, please provide us with your CDC number.

4    I'll begin and we'll move to my right.  My name is

5    Janice Eng, E-N-G, Commissioner.

6        **DEPUTY COMMISSIONER FILANGERI:**  Doug

7    Filangeri, F-I-L-A-N-G-E-R-I, Deputy Commissioner.

8    Mr. Jacobs.

9        **DEPUTY DISTRICT ATTORNEY JACOBS:**  James

10    Jacobs, J-A-C-O-B-S, Deputy District Attorney, Los

11    Angeles County.

12        **INMATE SUEGA:**  Suega, S-E-U-G-A, E-46750.

13        **ATTORNEY STRINGER:**  John Stringer,

14    S-T-R-I-N-G-E-R, Attorney.

15        **PRESIDING COMMISSIONER ENG:**  Okay.  For the

16    record, we have two correctional officers present

17    for security reasons and they will not be

18    participating in the hearing.  Sir, before we

19    begin, you'll be required to read aloud the ADA

20    Statement in front of you, so whenever you're

21    ready, go ahead and start.

22        **INMATE SUEGA:**  "The Americans with

23        Disabilities Act, ADA, is a law to

24        help people with disabilities.

25        Disabilities are problems that make it

26        harder for some people to see, hear,

27        breathe, talk, walk, learn, think,

3

1      work, or take care of themselves than

2      it is for others.  Nobody can be kept

3      out of public places or activities

4      because of a disability.  If you have

5      a disability, you have the right to

6      ask for help to get ready for your BPT

7      hearing, get to hear the hearing,

8      talk, read forms and papers, and

9      understand the hearing process.  BPT

10     will look at what you ask for to make

11     sure that you have a disability that

12     is covered by the ADA and that you

13     have asked for the right kind of help.

14     If you do not get help or if you don't

15     think you got the kind of help you

16     need, ask for the BPT 1070 Grievance

17     Form -- 1074 Grievance Form.  You can

18     also get help to fill it out."

19          **PRESIDING COMMISSIONER ENG:**  Okay.  Great.

20     The record reflects that you have signed a BPT

21     Form 1073 on July 28th of 2006, and that form is a

22     Reasonable Accommodation Notice and Request that's

23     in accordance with provisions of the Americans

24     with Disabilities Act.  And on that form you have

25     indicated that you do not have any disabilities as

26     defined under the ADA; is that true?

27          **INMATE SUEGA:**  Yes.

4

1     PRESIDING COMMISSIONER ENG:  So the

2   information is still current and correct?

3     INMATE SUEGA:  Yes.

4     PRESIDING COMMISSIONER ENG:  Okay.  I still

5   have to go through these daily questions --

6     INMATE SUEGA:  Uh-huh.

7     PRESIDING COMMISSIONER ENG:  -- all right?

8   So do you have any problems walking up or down

9   stairs or for distances of 100 yards or more?

10     INMATE SUEGA:  No.

11     PRESIDING COMMISSIONER ENG:  Okay.  And do

12   you have -- do you need glasses or a magnifying

13   device in order to see and read any documents?

14     INMATE SUEGA:  No.

15     PRESIDING COMMISSIONER ENG:  Okay.  And do

16   you have any hearing impairments?

17     INMATE SUEGA:  No.

18     PRESIDING COMMISSIONER ENG:  Have you ever

19   been included in a Triple CMS or EOP programs?

20     INMATE SUEGA:  No.

21     PRESIDING COMMISSIONER ENG:  And you know

22   what those are?

23     INMATE SUEGA:  Yes.

24     PRESIDING COMMISSIONER ENG:  Okay.  Okay.

25   Sir, do you suffer from any disability that would

26   prevent you from participating in today's hearing?

27     INMATE SUEGA:  No.